THE TOWNSHIP BOARD OF ECORSE V. THE BOARD OF SUPERVISORS OF WAYNE COUNTY.

*Bridges—Stream forming boundary between two townships—Authority of board of supervisors—Draw-bridge.*

1. Act. No. 62, Laws of 1889, providing for the construction of bridges over streams which form the boundary line between two townships, does not apply to a *navigable* river, over which it would be necessary to construct a *draw-bridge*, and maintain and manage the same during the season of navigation.

2. The duty of maintaining a draw-bridge over navigable waters includes the obligation to properly provide for the safe passage of vessels through the draw.

Mandamus to compel the board of supervisors of Wayne county to take action under Act No. 62, Laws of 1889. Submitted June 4, 1889. Denied June 14, 1889. The facts are stated in the opinion.

*Fred H. Warren,* for relator.

*Henry M. Duffield,* for respondent.

CHAMPLIN, J.   The township of Ecorse is situated on the west bank of Detroit river.

The township of Springwells lies immediately north of the township of Ecorse, the dividing line between the two townships being the river Rouge, which rises in the southern part of Oakland county, flowing south and south-easterly through the townships of Redford and Dearborn, thence easterly between the townships of Springwells and Ecorse to its confluence with the Detroit river.

From a distance of some 10 or 15 miles westerly from the Detroit river the Rouge is a navigable river, which will admit of the passage of boats and vessels drawing not to exceed 14

feet of water.   Appropriations have been made by the federal government and expended in dredging the stream.

A highway known as the "Detroit and Monroe Road" runs through said townships of Springwells and Ecorse, and crosses the river Rouge by a bridge that has been maintained for 70 years and upwards.

In the year 1867 a new bridge was built by the townships of Springwells and Ecorse jointly, since which time it has been maintained and operated by said townships until the year 1886, when the township of Springwells abandoned the same, and has ever since refused to contribute anything towards operating or keeping the same in repair.   This bridge is an "old-fashioned lift bridge," and is in a very dilapidated and unsafe condition, and a new bridge is an imperative public necessity.

On or about the twenty-third day of April, 1889, there was presented to the township board of the township of Ecorse a petition signed by 17 freeholders of the township, setting forth that the bridge over the river Rouge was in a dangerous and unsafe condition for public travel, and a partial obstruction to navigation, and that a new bridge is a public necessity, and asking said board to take the necessary steps under provisions of Act No. 62, Laws of 1889, to call a special session of the board of supervisors of Wayne county to consider the subject.

On the twenty-seventh day of April, 1889, said township board of the township of Ecorse passed a series of resolutions setting forth the unsafe condition of the bridge, the abandonment thereof by the township of Springwells, the public necessity for a new bridge, and requesting the township of Springwells to join with the township of Ecorse in building and maintaining a new bridge, which resolutions were served upon the township board of Springwells on the twenty-ninth day of April while in session; and on the same day the township board of Springwells, by resolution unani-

mously adopted, refused said request, and then and there declined to join with the township of Ecorse in building and maintaining a new bridge over said river Rouge, or to join in the repair of the present one, a certified copy of which action was, on the same day, transmitted to the township board of Ecorse, who thereupon filed with William P. Lane, clerk of the board of supervisors of the county of Wayne, a petition setting forth the facts above stated, and praying that the board meet in special session and determine—

"1. That a new bridge at the point named is a public necessity.

"2. To determine the kind of a bridge to be constructed, and the maximum cost thereof.

"3. To determine whether the cost of said bridge shall be raised in one or two years.

"4. To issue an order for the construction of said bridge, and that it compel the township of Springwells to join with the township of Ecorse in the erection and maintenance thereof.

"5. That it fix the respective portions which each township shall contribute for the construction of such bridge, and for keeping the same in repair, and operating the draw thereon.

"6. That it take such other action as is made necessary by Act No. 254, Session Laws of 1889."

In compliance with this petition the clerk of the board of supervisors called a special session of that body, which convened on the sixteenth day of May, 1889, and heard the petition, as well as the petition of a large number of freeholders of the township of Springwells, which were referred to a committee, with instructions to examine and report the result thereof, together with their opinion, to said board.

Said committee visited the locality of the proposed bridge, heard testimony and listened to arguments, and afterwards, and on the twenty-fifth day of May, 1889, presented to said board their report, reciting the dangerous condition of said bridge, the immediate public necessity of a new bridge, and

recommending the construction of a new iron swing-bridge, to cost not to exceed $20,000.

The committee further recommended that the township of Springwells join with the township of Ecorse in the construction of such bridge, the expense thereof to be borne equally between such townships, and that a sufficient sum to build the bridge be raised by taxation upon the taxable property of the townships in two years, viz., 60 per cent. in the year 1889, and 40 per cent. in the year 1890; and that the expense of operating the bridge, when constructed, should be borne equally by the townships.

The board of supervisors laid the report upon the table, and resolved that the act of the Legislature did not cover navigable streams or swing-bridges, and that they had no discretion in the matter, nor authority to act, and therefore denied the petition of the township board of Ecorse.

The township board of Ecorse have presented a petition to this Court for an order upon the board of supervisors, based upon the foregoing facts, to show cause why a peremptory *mandamus* should not issue commanding them to reconvene and consider said petition, the report, preamble, and resolutions of their committee, and exercise the discretion and authority conferred upon them by said act. The proceedings of the board of supervisors, and the report of the committee, as well as the protest of the township of Springwells, are attached to and made a part of the petition.

The protest of the supervisor of Springwells asserts that the cost of the bridge will exceed $22,000, and the annual expense of maintaining the bridge as a draw-bridge will exceed the sum of $1,500 annually; that the act referred to nowhere confers power upon the board to apportion and assess the expense of maintaining the bridge as a draw-bridge; that it was not the intention of the Legislature that such act should extend to draw-bridges.

The first section of the act referred to, which is Act No.

62, Laws of 1889 (it being Senate bill No. 254), provides that whenever any township shall be desirous of having a bridge constructed which, when built, will be partly in one township and partly in another, and the adjoining township shall be unwilling or refuse to join in the construction of such bridge, such township may apply to the board of supervisors of the county for an order for the construction of such bridge, and for fixing the respective portions which each township shall contribute for the construction and keeping in repair of such bridge, as well as for deciding what kind of bridge shall be constructed.

The second section provides for the calling of a meeting of the board of supervisors, and the time and notice to be given of such meeting.

The third section reads as follows:

"At such meeting said board of supervisors shall have the power and it shall be their duty to grant or refuse the prayer of said petitioner. And if they shall grant the same they shall describe the kind of bridge to be built, and the limit of cost which it shall not exceed; and, for the purpose of facilitating their determination of the kind and cost of the bridge, each township, city, and village named in the petition may present a plan or plans and specifications of such proposed bridge, with or without drawings, and an estimate of each as to cost.

"Said board shall also determine the quota or proportion which each township, city, and village named shall contribute thereto, and whether the whole amount shall be raised the first year, or a part, and what part the first and what part the second year, but no part of it shall be deferred more than two years.

"They shall also determine the quota of each towards keeping the same in repair, which shall remain the same till altered by said board, or by the consent of each township, city, and village which is a party to this proceeding."

Section 4 provides that upon determining that such bridge shall be built, and the other matters mentioned in section 3, then the board of supervisors shall order the county treasurer to open an account with each township whose quota

they have determined, under the designation of "the bridge fund" (naming the bridge), charging to each the quota so assigned by the board, and through their clerk to serve a copy of the order upon the assessing officers of the townships, respectively, and upon the collecting officers of such townships, and thereupon it is made the duty of such assessing officers to assess, and such collecting officers to collect, the taxes assigned for such townships respectively. The collectors are required to give a bond to the county treasurer. The board of supervisors are to issue their warrant to each of said collecting officers, requiring them to collect and pay over the amounts to the county treasurer to apply on the bridge fund.

Section 5 authorizes the board as such, or through a committee of three of their members, as their agents, at any time after they have made the order for raising such bridge fund, to contract for the building of such bridge as an entirety, or for any materials or labor for the same, if they prefer to build it without contract as a whole, in which case they or their committee may employ an overseer, but in all cases to be payable only out of the bridge fund when and as collected. If let by contract, notice of letting is provided for. The board, as such, or its committee, as agents, are to determine whether such bridge is completed according to the plans or contract; but if the township boards in behalf of which it is built shall admit to such board, or its committee and agents, its full completion, it shall be conclusive of the question.

Section 6 provides that a full account shall be kept by the clerk of the board of supervisors of all expenses to the county in carrying the act into effect in any such case, and when the bridge is completed the amount is to be certified to the county treasurer, and charged to the account of the bridge fund, to each township in the ratio established by the board for such bridge, which amount, together with any balance of

the bridge fund unpaid, shall be raised by tax in each township, as above provided for the construction of the bridge.

It appears from the above statute that when a stream forms the boundary line between two townships, and a highway crosses from one township into another which the respective townships are by law bound to keep in repair, and the adjoining townships cannot agree upon joint action in constructing a bridge across such stream, the board of supervisors may, upon the application of one of such townships, proceed to construct such bridge, and assess and collect the cost thereof from the townships into which the bridge extends, assessing upon each such proportion of the cost as they see fit.

To all intents and purposes the bridge constructed under this act is a county bridge. The board of supervisors determine its necessity, prescribe its plans, contract for building it or hire it to be done, determine its cost, direct the assessment of the tax, issue their warrant for its collection, and receive and pay out the money. All the townships are permitted to do is to present plans, which the supervisors may adopt or not, and admit to the board that the bridge is completed if theychoose to do so. The statute makes the two townships the assessing districts, but leaves it to the board of supervisors to apportion the cost and expense between the townships, without any fixed standard of apportionment.

There are several difficulties which have suggested themselves to us in the examination of this law which may affect its validity, which we shall not mention at this time, as we have not had the benefit of an argument upon them, but which have been somewhat discussed in our previous decisions. *People v. Highway Commissioners*, 15 Mich. 347; *People v. State Treasurer*, 23 Id. 499; *People v. Supervisors*, 26 Id. 22; *Attorney General v. Supervisors*, 34 Id. 46; *Thomas v. Gain*, 35 Id. 164, 165; Const. Mich. Art. 10, §§ 9, 11.

We do not think the act was intended to apply to naviga-

ble rivers, where it would be necessary to construct a draw-bridge, and maintain and manage the same during the season of navigation. The law provides that the board of supervisors shall determine the kind of bridge to be built; but this refers to material and plan, and not whether it shall be a draw, lift, or swing bridge.

There are three things, and only three things, which the board of supervisors are authorized to determine and apportion to the townships, viz., the cost of the structure, the expense of constructing, and the quota of each towards keeping the bridge in repair.

Nothing is said about the expense of maintaining and operating the draw, which is an important item, and one not likely to be overlooked had it been the intention of the Legislature to include the bridging of navigable rivers. Which township is to provide the servants to operate the draw, and who is to be responsible for their negligence?

"The duty of maintaining a draw-bridge over navigable waters includes the obligation to properly provide for the safe passage of vessels through the draw." 2 Amer. & Eng. Cyclop. Law, 549; *Weisenberg v. Winneconne,* 56 Wis. 667 (14 N. W. Rep. 871); *Egerton v. Mayor,* 27 Fed. Rep. 230.

In view of the responsibility attaching to the construction of a draw-bridge, not only as to navigation but to the traveling public, we should not feel inclined to hold that the act was intended to cover the construction of draw-bridges, unless clearly expressed in its terms, or is necessarily implied by it.

Where a township refuses voluntarily to assume the burden and obligation of constructing and maintaining a draw-bridge, the burden and the obligation cannot be forced upon it by the board of supervisors without an express grant from the Legislature authorizing them to impose such burden.

Under the law as it stands the board of supervisors are authorized to build a bridge, but they are not authorized to maintain and operate a draw in it, and no navigable river can

be bridged without providing some means for the passage of vessels without unnecessary delay.

The act, by its terms, refers only to such bridges as, when constructed and kept in repair, are made safe for the traveling public.    The application is therefore denied.

The other Justices concurred.