FLETCHER OSBORNE v. FREDERICK LINDOW, SUPERVISOR OF THE TOWNSHIP OF CHINA.

*Mandamus—Boundary-stream bridges.*

1. Act No. 62, Laws of 1889, which sought to make provision for boundary-stream bridges, was before the Court in *Township Board v. Supervisors*, 75 Mich. 264, and we found ourselves unable to enforce it, and our attention has not been called to any statute that effectually secures the right to have such a bridge built.

2. Relator applied for *mandamus* to compel respondent to place on the assessment roll so much of private claim 306 as lies south

of the town line between China and St. Clair townships and west of Pine river and of the corporate limits of the city of St. Clair. The reason given for relator's interference is that there was formerly a bridge across Pine river on the township road between China and St. Clair, on the west side of Pine river, which communicated with the city of St. Clair, lying on the east side, which is now destroyed, and cannot be rebuilt, because of the dispute as to the township in which the west end of it would lie; that respondent claims the land belongs to East China, whereas the relator claims it is in China; that relator uses the road, and he and his neighbors need the bridge to get conveniently to the city. It does not appear whether the bridge had a draw or not. The Court hold that relator's purpose cannot be reached by *mandamus* proceedings, and suggest that the controversy can be amicably determined.

*Mandamus.* Submitted November 12, 1889. Denied December 28, 1889.

Relator applied for *mandamus* to compel respondent to place on the assessment roll of his township certain land alleged by relator to be within the legal boundaries of said township, which remedy is denied as being inapplicable to the case. The facts are stated in the opinion.

*Stevens & Merriam,* for relator.

*P. H. Phillips,* for respondent.

CAMPBELL, J. This is an application for a *mandamus* to compel respondent to place on the assessment roll so much of private claim 306 as lies south of the town line between China and St. Clair and west of Pine river and of the corporate limits of the city of St. Clair. The reason given for relator's interference is that there was formerly a bridge across Pine river on the town-line road between China and St. Clair, on the west side of Pine river, which communicated with the city of St. Clair, lying on the east side, which is now destroyed, and cannot be rebuilt, because of the dispute as to the township

in which the west end of it would lie; that respondent claims the land belongs to East China, whereas relator claims it is in China; that relator uses the road, and he and his neighbors need the bridge, to get conveniently to the city. It does not appear whether the bridge had a draw or not.

The return does not admit the correctness of relator's map, and also claims that the land belongs in East China, under the law setting off that township. The order to show cause was allowed on the supposition, naturally arising from the affidavit, that the dispute was not a very serious one. But the return raises important issues of fact, as well as of law, and indicates much more serious difficulties than were suggested or argued. We have found in our own investigation of the statutes that it would be impossible to dispose of the controversy without a knowledge of several matters on which we are given no light whatever. We have found, also, so much confusion and blindness in the legislation on the subject that, while we have tried to trace out all the laws, not only from indexes but otherwise, we do not feel sure that something may not lurk where we have not found it, and we feel the more doubt because counsel on both sides have assumed one important boundary as existing which we have found no statute to warrant. A brief statement of the statutory history, as far as we know the facts, will indicate better what is obscure and needs explanation. It is perhaps necessary to state that we have no right to introduce into this case as fixed facts what may have been determined by us in a controversy between private parties, who are strangers to this record.

It appears from so much of the maps as is not disputed that until they approach the St. Clair river, within not far from two miles, China and St. Clair townships

are separated by the line between the fourth and fifth rows of townships north of the base line. It also appears that the line between ranges 16 and 17 east is so near St. Clair river as to create quite narrow fractional townships, which are in some places less than a mile in width. Pine river enters St. Clair river, apparently not far from where the line between the fourth and fifth rows of townships would, if extended, strike St. Clair river. In coming towards St. Clair river from the country inland, the maps indicate that it runs from town 5, of range 16, in a somewhat winding course, a few degrees east of south, across what would in a regular township be section 1, and then returns through the same section, and across the township line, in a similar irregular course, with a general northerly direction for not far from a straight distance of a mile and a quarter, when it doubles on itself, in a long ox-bow, southward, and by further sinuosities works north-eastward to its mouth. Four old private claims, numbered 304, 305, 306, and 307, border on or include the river up for several miles, to where it enters claim 307 from the north, where that claim touches section 26 in township 5 north, of range 16 east. Of these claims, 304 is the south-easterly one, bordering on St. Clair river, longest from north to south. Claim 305 lies north of it on the river, longest from east to west. The mouth of Pine river is at or near the dividing line between them. Claim 306 is a rectangular claim lying to the north-west of 304, and joining it, with the same northern and southern boundaries. The south-westerly corner of 305 is some distance eastward from the northwest corner of 306. Claim 307 lies further to the northwest, adjoining claims 305 and 306, and having, by reason of the jog between the west boundaries of 305 and 306, its northerly half longer to that extent than its

78 MICH—39.

southerly half.   All of these claims are bounded by
lines rectangular to each other, except where St. Clair
river forms the easterly line of 304 and 305.   The lines
do not run with the points of the compass, but are at an
inclination of not far from 14 degrees, so that the gen-
eral direction of the group approximates north-west and
south-east.   The result is that claim 307 is entirely
within what would be the extended lines of township 5
north, of range 16 east.   Claim 305 is within the
extended lines of the same township, and also of township
5, of range 17 east.   Claim 304 includes parts of four
townships,—4 and 5 north, and 16 and 17 east.   Claim
306 goes into townships 4 and 5 north, and 16 east, and
whether it reaches range 17 is disputed.   Judging from the
maps, the east and west town line strikes 306 on its west
side about half a mile southerly of its north-west corner,
and reaches Pine river somewhat less than half that dis-
tance eastward from the line.   Pine river·enters 306 near
its north-west corner, and leaves it near its south-east
corner, but enters again on the east side, about two-
thirds of the way up, and leaves at the north-east corner..
All of these are rough estimates from maps that are not
perfectly accurate.   It appears, therefore, that both 304
and 306 extend northward a long distance over the ordinary
township line.

In 1827 the township of Sinclair (since corrupted into
St. Clair) was set out by the legislative council of the
territory so as to include townships 4 and 5 in ranges
13, 14, 15, 16, and 17.   It thus contained all four of the
private claims referred to.   2 Terr. Laws, 478.   In 1835
it was enacted—

"That all that· part of the county of St. Clair com-
prised in surveyed township four north, ranges fifteen,
sixteen, and seventeen east, be a township by the name
of China."   3 Terr. Laws, 1368.

Some doubt would seem to have arisen whether private claims, separately surveyed, were to be regarded as part of a township; for on March 31, 1838, it was enacted that all that portion of the county designated by the United States survey as township 5 north, of range 16 east, and also private claim 255, should be attached to St. Clair (Laws of 1837–38, p. 140), thus repeating the old description, which was sufficient but for the doubt. This left 304 and 306 in the same uncertainty; and on April 12, 1839, the lines were temporarily settled by making the north line of China coincide with the extension of the line between tiers 4 and 5 north of the townships to the national boundary line in St. Clair river. All the previous acts of the towns were legalized. Laws of 1839, p. 92. This course was exceptional, for it had not been customary to cut private claims in two in laying out townships; and, as the line was purely theoretical, and had no landmarks or surveys to indicate it on the ground, it was a source of uncertainty. On March 15, 1849, the town of Casco was set out from the west end of China, including township 4 in range 15. Laws of 1849, p. 88. At the same time the line between China and St. Clair was re-adjusted so as to put all of claim 306 in China, and to put the part of 304 north of a line running from the intersection of Pine river with George Palmer's south line east to the St. Clair river into St. Clair. Id. p. 106. Just where Mr. Palmer's line was does not appear; but it was probably the south line of the village plat of Palmer, afterwards called "St. Clair Village."

In 1850 the village of St. Clair was first incorporated. Laws of 1850, p. 219. All of the descriptions in the statute refer to lots on some plat not named, and to an engraved map made by J. G. Darby, of Buffalo. It seems to indicate that the village comprised parts of

claims 305 and 304, and probably took in a little more of 304 than had been included before. This appears from an act on page 241 of the Laws of 1850, repealing the boundary act of 1849 far enough to except from China whatever land fell within the incorporated village.

In 1858 (Laws of 1858, p. 49) St. Clair city was incorporated so as to include more land than the village. As no change is said to have been made since affecting the boundaries now in dispute, it may stand as fixing them, as far as it goes. Besides including some lands to the north, it takes in the whole of claim 305. It then passed along the north line of 306 to the north-west corner of 304, and thence southerly, and again easterly, along the lines of certain outlots, to Pine river. and up that river to another lot line, running east to St. Clair river. In addition to this, it covered "all that part of private claim No. 306 which lies north and east of Pine river."

It is insisted by relator that this left no part of 306 in China, except so much as lay on the west side of the river, which is claimed to intersect the south end of the claim. But, however this may be, we have found no law annexing any of this west part to the township of St. Clair; and if this be so, then the town-line road must have stopped at the west side of the claim, and from that run through the town of China alone to Pine river, and left that end of the road entirely outside of St. Clair. Counsel on both sides overlooked this fact, as did also relator; and it is possible some action may have been taken which has escaped our notice. But it is very significant that, except for a short period, this claim has never been affected by the subdivisions of the regular linear survey of town lines.

In 1859 (Laws of 1859, p. 355), East China was set off from China in this language:

"That all that part of the township of China, in the county of St. Clair, lying in fractional township number four, including private claims extending into range number sixteen, be, and the same is hereby, set off from the residue of said township and organized into a separate township, by the name of East China."

The question is whether claim 306 can be regarded as coming under this category. Unfortunately, the peculiar character of previous legislation has shown that we have no guide to the legal intent outside of the language as applied to undisputed facts.

If these private claims had been left intact by legislation, there would be strong reasons for holding that the private claims in ranges 17 and 16, being one compact body, were all meant to be placed by themselves, and sepparated from the lands described in sections. But they have been so cut up and mutilated that only parts of them could be, under any description, brought into East China. And we could hardly suppose that, being so dismembered, it would be a fair construction to bring into that township any lands separated from it completely by intervening territory. If a distinct issue of fact had not been made by the return, which leaves us no means of locating anything, we could have no difficulty in finding that it is hardly possible any part of claim 306 not within the city limits of St. Clair could reach within a long distance of the range line. The course of Pine river on the map furnished us indicates that there is no point of contact between claim 304 and the residue of 306 outside of the city. To reach it there would be a necessity of crossing the south fraction of section 1 in township 4, of range 16, which cannot belong to East China. If so cut off, we have no doubt it belongs to China; and, as the fact is easily to be discovered, it would be great folly to litigate it.

We can see no reason, however, for attempting to reach

the case by these *mandamus* proceedings. Upon the issues made by the return, there are three townships interested in the controversy, and entitled to be impleaded in some way. East China is directly interested. It is of some consequence to the township of St. Clair whether the whole remnant of claim 306 is in China, as it seems. to be.

It is also to be noticed that the only reason given by relator for intervening is to get a bridge built. Our attention has not been called to any statute that effectually secures any such right. The law of 1889, which sought to make provision for boundary-stream bridges, was before us in *Township Board v. Supervisors*, 75 Mich. 264 (42 N. W. Rep. 831), and we found ourselves unable to enforce it. As the purpose for which relator moves cannot be reached on the proceedings as they stand, there is no occasion to retain them. It would be easier to begin again, after correcting the misapprehensions existing on both sides, than to attempt to mend up this record. There appears to be no disposition on the part of respondent to. avoid his duty; and, with the suggestions we have made, it can probably be determined amicably. But, if China. and St. Clair have both acted under a mistake concerning their boundaries, it is possible legislation may be needed to have more definite boundaries intelligibly declared; That is beyond our province.

The *mandamus* must be denied, without costs, and without prejudice to any future proceedings which the parties may find advisable.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred.