INHABITANTS OF BRUNSWICK, Pet'rs. for Mandamus.

*vs.*

CITY OF BATH.

Sagadahoc.    Opinion July 2, 1897.

*Way.   Bridge.   Mandamus.   R. S., c. 18, § 53 ; Spec. Laws.   1842, c. 29 ;*
*1843, c. 67 ; 1861, c. 26.*

The legislature in 1842 authorized the then town of Bath to erect and maintain a free bridge across New Meadows river, the channel of which river was then a boundary line, at the place of location of the bridge, between the towns of Bath and Brunswick, now between the towns of West Bath and Brunswick, as well as between the counties of Cumberland and Lincoln, and now between Cumberland and Sagadahoc counties.   The legislature also authorized the county commissioners in their respective counties to lay out ways to the bridge from Bath and from the bridge in Brunswick, which was done, Brunswick constructing the way as laid out on its territory, and the roads have been used for public travel ever since    The bridge having been carried away by freshet, the legislature, in 1861, authorized the City of Bath after the town of West Bath had been incorporated out of its territory, to rebuild the bridge, the act containing a provision that "if the city shall erect and complete such bridge, it shall have the same control thereof, and be under the same liabilities to keep the same in repair, as if the bridge were wholly within the limits of said city, and may raise money by taxation or otherwise for the purpose of building and maintaining said bridge." The city built the new bridge in pursuance of the act, and having lately neglected to keep it in repair the town of Brunswick seeks by mandamus to require it to do so.

*Held* ; that mandamus is a proper remedy, and the town of Brunswick a proper party to prosecute the remedy, and that the City of Bath is under obligation to keep up and maintain the bridge until the public way over it shall be discontinued by the commissioners of the two counties, or until the city may obtain relief from its self-assumed liabilities by some act of the legislature.

The case having been certified to the Chief Justice, upon the petition and answer to be taken as the alternative writ, it is ordered, that the peremptory writ issue from the clerk of Sagadahoc county.

ON REPORT.

This was a petition for mandamus.   The parties agree that the petition and answer should be reported to the law court, for its determination of all questions of law involved therein, the peti-

tion and answer to be taken as the alternative writ, and such special acts of the legislature as either party may rely upon to be also taken as part of the case.

It was admitted that the town of Bath built or repaired the Bull Rock Bridge under the authority of chapter 29, of the private and special Laws of 1842, that the bridge was washed away April 5, 1852, and that it was rebuilt by the City of Bath in 1861, under the authority of chapter 26, of the private and special Laws of that year.

The facts appear in the opinion.

*Barrett Potter*, for plaintiffs.

*F. E. Southard*, for defendants.

Mandamus not proper remedy: *Baker* v. *Johnson*, 41 Maine, 15; *Belcher* v. *Treat*, 61 Maine, 577; *Davis* v. *Co. Com.* 63 Maine, 396; *Townes* v. *Nichols*, 73 Maine, 515.

Brunswick is not a proper party to move for the writ.

No county way has ever been laid out over this bridge that could in any manner affect the rights of Bath.

Bath as a town had complete control over Bull Rock Bridge as it was built by her, could discontinue or remove it at any time she saw fit to do so, and the city of Bath has the same right.

Bath has discontinued the bridge so far as she is concerned and so far as her liability goes. She has not discontinued or attempted to discontinue the county way. That remains as laid out in 1844 and West Bath and Brunswick must now keep it in repair.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, STROUT, JJ.

PETERS, C. J. The inhabitants of Brunswick in their corporate capacity seek by proceedings in mandamus to compel the city of Bath to put in repair a bridge which crosses New Meadows river at a place called Bull Rock or Little Bull Rock, so that such bridge shall be safe and convenient for public travel thereon. The questions involved require some historical statement of the origin of the bridge and of the manner in which it has been heretofore maintained.

In 1842 a special legislative act was obtained by the then town of Bath allowing it to erect and maintain this bridge, the act reading as follows: "Sect. 1. The town of Bath is hereby authorized to erect and maintain a free bridge over New Meadows river, from land of Robert Harding in Brunswick over Little Bull Rock (so-called) to land in Bath; said bridge to be provided with a convenient draw sufficient for the passage of vessels on said river, and also to be built of good materials, substantially made, well railed, and convenient for the passage of travelers thereon.

"Sect. 2. If the town of Bath shall erect and complete said bridge, the said town shall thereafter have the same control thereof, and be under the same liabilities to keep it in repair, as if it were wholly within the limits of said town and said town is authorized to raise money by taxation or otherwise, for the purpose of building and maintaining the same."

By virtue of the authority of this act the bridge was erected, in the summer of 1842, by the inhabitants of Bath, and maintained exclusively at their expense until April, 1852, when it was carried away by freshet.

New Meadows river at the place where crossed by this bridge being then the boundary line between the counties of Cumberland and Lincoln, now between Cumberland and Sagadahoc counties, the counties first named were authorized by a special act, passed by the legislature in 1843, (ch. 67 priv. and spec. laws 1843), to lay out a road over the bridge, the act running as follows:

"Sect. 1. The county commissioners of the counties of Lincoln and Cumberland are hereby authorized, after petition and notice as required by the twenty-fifth chapter of the revised statutes, to lay out a highway from High street in the town of Bath, county of Lincoln, over the bridge erected on New Meadows river, at a place called Little Bull Rock, to some point in the county of Cumberland.

"Sect. 2. Nothing in this act shall be so construed as to affect the powers and obligations imposed on the town of Bath by an act passed March 10, 1842, entitled 'an act to authorize the town of Bath to erect a bridge over New Meadows river.'" Under the

authority of this act the commissioners of the two counties in 1843, acting jointly, laid out the highway accordingly.

There was no bridge, after the one which was swept away in 1852, until 1861, when another legislative permission for the building of a bridge was obtained by Bath (ch. 26 priv. and spec. laws 1861,) the new act reading as follows:

"Sect. 1. The city of Bath is hereby authorized to erect and maintain a free bridge over New Meadows river, from land in Brunswick, over Little Bull Rock (so-called) to land in West Bath; said bridge to be built of good materials, substantially made, well railed and convenient for travelers to pass thereon.

"Sect. 2. If the City of Bath shall erect and complete said bridge, the said city shall thereafter have the same control thereof, and be under the same liabilities to keep it in repair as if it were wholly within the limits of said city, and said city is authorized to raise money by taxation or otherwise, for the purpose of building and maintaining said bridge."

In 1861, following the act above quoted, the city of Bath erected a new bridge on the old location, and has ever since maintained it in at least a passable condition until shortly before the institution of this petition, when, it is alleged, the structure became unfit and unsafe for public travel. Both Bath and Brunswick have built and maintained roads in connection with the bridge for the use of themselves and the public generally. It is inferable from the tone of the arguments of counsel that when the bridges were first erected the principal benefits thereof accrued to the city of Bath and its citizens, while at the present day, by the mutations of business, Brunswick and its citizens receive greater advantages from the bridge than does Bath; especially if the latter is to pay all the expenses of maintaining the same. The fact that New Meadows river is now the boundary line separating Brunswick from West Bath, instead of from Bath as formerly, the latter town having been created in 1855 out of territory before that time constituting a portion of Bath, may be one reason why the city is less interested in maintaining the bridge than formerly.

The first objection urged by the respondents against the petition

is, that the complainants are not a proper party to maintain mandamus in such a case. We think otherwise. The town is certainly a much interested and a responsible party. The case cited by the petitioners, *Inhabitants of Cambridge* v. *Charlestown Branch R. R. Co.*, 7 Met. 70, fully sustains their position on this point.

It is contended that mandamus is not a proper remedy for the reason that the petitioners have a complete and adequate remedy at law in either one of two ways; first, by indictment; and, secondly, by petition to the county commissioners under a provision of the statute (R. S., ch. 18, § 53) which invests such commissioners with the power to compel a municipality to repair its neglected ways. But while those might be modes of legal remedy, they would not be adequate and sufficient for the reason that, inasmuch as the middle of the bridge is the divisional line between two counties, the remedy would have to be pursued by separate indictments or petitions in two counties, and not by any joint prosecution or procedure in any one county alone. And the result might be one way in one county and another way in the other, and it would be very likely to be so if any local feeling or prejudice should affect the question. Such a legal remedy as either of the uncertain modes suggested would be unsuitable and unsatisfactory. This court has said that mandamus will be granted if it be doubtful if there be another effectual remedy, or if the court does not clearly see its way to one. *Baker* v. *Johnson*, 41 Maine, 15. Mandamus has frequently been sustained against county supervisors and county commissioners to require of them the execution of ministerial duties resting on them; and against corporations and their officers to enforce the performance of corporate duties. *Railroad Commissioners* v. *P. & O. C. R. R. Co.*, 63 Maine, 269. Towns may compel, by mandamus, railroad companies to keep in repair bridges in their towns which the companies are bound to maintain. *State* v. *Gorham*, 37 Maine, 451. Generally, where ministerial duties are clearly defined and are legally established, mandamus will be upheld to enforce them. It is not a sufficient answer to the application that the party is also legally liable to indictment for the act complained of. Bou. Law Dic. Title Mandamus, and cases cited.

At the same time whether the writ of mandamus should be granted or not, depends on the judicial discretion of the court, and it may be denied on grounds of expediency when equity does not clearly require the contrary.  *Belcher* v. *Treat*, 61 Maine, 577. Acting on this principle the court in Massachusetts refused to grant the writ to compel county commissioners to construct an unnecessary way, although legally laid out, basing its refusal on the ground that another way already constructed sufficiently subserved the public convenience.  *Hill* v. *Co. Com'rs*, 4 Gray, 414. While we may entertain the idea that there is less necessity for this bridge now than when it was built in 1842, or rebuilt in 1861 after its abandonment for ten years, still, inasmuch as no evidence whatever was introduced at the hearing, bearing on the question of any necessity for the bridge, or of its importance to the people of either Brunswick or Bath, we feel that we are bound to assume that public necessity and convenience require its continuance.

· And this brings us to perhaps the most important question of the case, and that is whether Bath is under any obligation to maintain the bridge longer than she desires to use the same for her own purposes; whether or not, in other words, she can so far abandon it as to deprive the public of its use.   It is contended in behalf of the respondents that the liability imposed on them was a consideration for the privileges conferred, privilege and liability existing dependently together; and that when one ceased both ceased, and when the city of Bath surrendered the privileges of the bridge she became absolved from the burden of further maintaining it.   The city has signified to the public her purpose of abandonment by the act of her city council in passing a vote, December 14, 1896, to discontinue her part of the way.   This vote, if ineffectual to abate the way, is effectual to indicate an intention to abandon the privilege of maintaining the bridge.

The petitioners contend, on the other hand, that the privilege conferred and the liability incurred are absolute and unconditional after once accepted by the city of Bath, and that she cannot voluntarily relinquish one for the sake of avoiding the other; and that she should maintain the bridge in good repair as diligently as

she must any highway or portion of any within the limits of her own territory, and continue to do so until relieved from the obligation either by some legislative enactment, or by a discontinuance of the way obtained through the joint action of the two boards of county commissioners. We feel constrained to believe that this position of the petitioners is the correct view of the question presented.

*Writ to issue.*