DIETRICH v. SCHREMMS.

1. BRIDGES—LOCATION—DELAYED OBJECTION.

Where a drawbridge has been located and maintained at a given point for 29 years, first by a private corporation and then by a township which purchased from the corporation, without objection from any person or municipality, during all of which time it has been recognized by the legislature as a lawful structure, and has occasionally been made the object of appropriations by the board of supervisors, it is too late for taxpayers to question its legality on the ground that it is not at the exact point authorized by the board.

2. SAME—NAVIGABLE STREAMS.

All navigable streams are public property for the use of all the citizens, and there must be some act of the sovereign power, direct or derivative, to authorize any interruption of them.

3. SAME—LIMITATIONS ON SOVEREIGN POWER.

In this State, the only limitations upon the sovereign power in the matter of bridging navigable streams are those imposed by article 18, § 4, of the State Constitution, requiring the consent of the board of supervisors, and by the Constitution and laws of the United States.

4. SAME—HIGHWAY COMMISSIONERS—INVASION OF CONSTITUTIONAL POWERS.

Therefore, an act which authorizes a given township to construct and maintain a bridge across a navigable stream which separates it from another township is not open to the objection that it seeks to divest the highway commissioner of such other township of his constitutional powers.

5. SAME—MAINTENANCE BY TOWNSHIP.

It is lawful for a township, with the authority of the board of supervisors and by virtue of an express grant of the legislature, voluntarily to assume the erection and maintenance of a drawbridge over a navigable stream which is the dividing line between it and another township.

6. SAME—DUTY TO REPAIR—IMPLIED POWERS.

Where a township has acquired the title to a drawbridge extending in part beyond its territorial lines, the right to raise

the money necessary to keep the structure in repair, and to operate the draw, follows as a matter of law

Appeal from Saginaw; Wilber, J.   Submitted April 26, 1898.   Decided June 7, 1898.

Bill by John Dietrich and others to restrain George Schremms and others, officers of the township of James, from employing a tender for, and making repairs upon, a certain drawbridge.   From a decree dismissing the bill, complainants appeal.   Affirmed.

*James H. Davitt* ( *George W. Weadock*, of counsel), for complainants.

*Frank E. Emerick* and *Chauncey H. Gage,* for defendants.

MOORE, J.   Complainants, who are taxpayers of the township of James, in Saginaw county, filed the bill in this case to enjoin the highway commissioner from making repairs on a bridge across the Tittabawassee river, known as the "Merrill Bridge," and to enjoin the employment of a bridge tender, and the payment of orders which had then been issued for repairs of said bridge.   In the court below the bill was dismissed.   Complainants appeal.

The record shows that the river at the place crossed by the bridge is the dividing line between the townships of Saginaw and James.   The bridge is a drawbridge.   The greater portion of the pier sustaining the draw when open is in the township of Saginaw, while the main channel for the passage of boats is in the township of James.   At this point the stream is navigable for boats of 15 tons or more burden.   A private corporation known as the Swan Creek & Saginaw Bridge Company was organized in 1867, and in that year was authorized by the board of supervisors to erect a swing bridge "across the Tittabawassee river, at or as near as may be to a point on said river where the section line between sections 4 and 5, town 11 north, of range 4 east, and sections 32 and 33, town 12

north, of range 4 east, in Saginaw county, crosses said river." Prior to this action, the highway came to the bank of the river, where a ferry was maintained; and at this location a bridge was built and opened for travel in 1869. In 1869 the legislature authorized the township of Swan Creek to borrow $3,000, and to apply it in aid of the construction of this bridge (Act No. 313, Laws 1869), which was done. In 1875 that portion of Swan Creek township adjacent to the river was formed into a new township, called James. The same year the legislature authorized the last-named township to purchase the bridge from the private corporation which then owned it, and the township was charged with the duty of attending to the swing and draw, and was authorized to collect tolls, and at any time to declare it a free bridge. This act provided:

"Upon said bridge being purchased by said township, the commissioners of highways of the township shall have charge thereof, and may employ some suitable person to attend the swing in said bridge, and to collect toll thereon," etc. Act No. 248, Local Acts 1875.

In 1883 the township made this a free bridge; and from the time the township bought the bridge, in 1875, until 1887, it operated, supervised, and kept all of the bridge in repair. In the last-named year the legislature authorized the township to borrow $4,000, issuing its bonds therefor, to build a bridge across the river "at the point where the bridge built by the Swan Creek & Saginaw Bridge Company is now located." This act provided that, if the township voted to borrow this money, the supervisor, clerk, and commissioner of highways should be special commissioners to have charge of the building of said bridge, and that they might make a contract for its building. Act No. 370, Local Acts 1887. The township voted the money, and the bridge was built in the same location as the former bridge, the piers being in the same places occupied by the other piers, except that in the new bridge there was one pier less than in the old bridge.

A bridge has been located at this point, first by the cor-

poration, and then by James township, for 29 years, without objection from any person or municipality until this bill was filed.    In 1887 the board of supervisors authorized the township of James to construct a bridge across the Tittabawassee river on the west line of section 4, town 11 north, of range 4 east.    It is now said that, as the location of the bridge is about 60 rods from the west line of section 4, the bridge is not a lawful bridge.

In *Maxwell* v. *Bay City Bridge Co.*, 41 Mich. 462, Justice COOLEY said:

"Bridges over navigable waters are sometimes needful at places where there are no towns or considerable settlements; and in such a case the interests involved would be concerned with getting over the stream, and not in making use of it in connection with commercial business at the point of crossing.    Less particularity might be sufficient in such a case, because it would generally be unimportant to the interests desiring or opposing the bridge whether it should be located a few rods farther up or down."

The record shows that in October, 1887, the board of supervisors appropriated $500 to aid the township of James in the construction of this bridge, and that at its October session in 1897 the board appropriated $400 to the township of James for the purpose of repairing the bridge so located, indicating no objection to its location.    As we have seen, the board of supervisors authorized the location of this bridge where it is in 1867, and at the dates mentioned made appropriations for its repair.    The legislature has recognized it for 29 years.    The bridge accommodates a large travel, one of the principal thoroughfares of the county passing over it; and we think it is now too late to raise the question.

It is said by complainants' counsel:    "The township of James had no authority to construct this bridge, so far as the same lies within the township of Saginaw; and, if Act No. 370, Local Acts 1887, can be construed as attempting to confer such authority, it is unconstitutional and void,"—citing *Davies* v. *Board of Supervisors of Saginaw Co.*, 89 Mich. 295; *Wilcox* v. *Paddock*, 65

Mich. 23; *Robertson* v. *Baxter*, 57 Mich. 127; *People, ex rel. Hubbard,* v. *Township Board of Springwells,* 25 Mich. 153; *People, ex rel. Le Roy,* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103); *Wrought Iron Bridge Co.* v. *Township of Jasper,* 68 Mich. 441. It is also claimed that there is no provision of law for raising money to pay bridge tenders, and that moneys raised for highway purposes must be expended within the township where raised; citing 3 How. Stat. § 1338; *Sawyer-Goodman Co.* v. *Township of Crystal Falls,* 56 Mich. 597. It is also said: "Because there was no provision in Act No. 370, either for repairing this bridge or operating the draw, that act was incomplete, and therefore not valid, even if constitutional upon other grounds;" citing *Ecorse Township Board* v. *Board of Supervisors of Wayne Co.,* 75 Mich. 264, approved in *Township of Frenchtown* v. *Board of Supervisors of Monroe Co.,* 89 Mich. 205, 209; *Osborne* v. *Lindow,* 78 Mich. 606, 614.

An examination of these cases does not convince us that it was either unconstitutional or unlawful to authorize the construction of the bridge in the first instance, or to authorize its purchase by the township of James later. Our attention has not been called to any provision of law authorizing highway commissioners, under the powers conferred upon them by the general highway law, to construct a bridge over a navigable stream where the interests of navigation required the bridge to contain a draw. Article 18, § 4, of the State Constitution, forbids the bridging of a navigable stream without authority from the board of supervisors of the county where the bridge is located. Subject to this limitation, and the limitation imposed by the Constitution and laws of the United States in relation to navigable streams, the legislature has the right to enact laws providing for the erection, maintenance, and ownership of bridges over the streams of this State. 4 Am. & Eng. Enc. Law (2d Ed.), 923. This right it has frequently exercised. Act No. 62, Pub. Acts 1889, provides for the erection of bridges on lines between townships,

and between townships and cities and villages. It was held in *Ecorse Township Board* v. *Board of Supervisors of Wayne Co.*, 75 Mich. 264, that this act did not apply to a navigable river over which it would be necessary to construct a drawbridge which must be operated during the season of navigation; Justice CHAMPLIN saying: "Where a township refuses voluntarily to assume the burden and obligation of constructing and maintaining a drawbridge, the burden and the obligation cannot be forced upon it by the board of supervisors without an express grant from the legislature authorizing them to impose such burden,"—indicating pretty clearly that, if a township voluntarily assumed the erection and maintenance of such a bridge when duly authorized by the board of supervisors and by virtue of an express grant of the legislature, it would be lawful. The record shows that all this was done in this case.

In *Com.* v. *Inhabitants of Charlestown*, 1 Pick. 180 (11 Am. Dec. 161), it is said that, "if the stream is a navigable river, it is for common use, and none but the legislature can authorize the interruption of it." The court in that case say further:

"There can be no doubt, therefore, that by the principles of the common law, as well as by the immemorial usage of this government, all navigable waters are public property for the use of all the citizens, and that there must be some act of the sovereign power, direct or derivative, to authorize any interruption of them. The legislature may, without doubt, by a general law, delegate to the magistrates of a county, or to any other body, the power of determining when public convenience requires that a bridge should be thrown over a creek or a cove; but, until they have made such delegation in express terms, it is a branch of sovereign power, to be exercised by the legislature alone."

*See Com.* v. *Coombs*, 2 Mass. 489; *Inhabitants of Charlestown* v. *Middlesex County Com'rs*, 3 Metc. (Mass.) 202; *Washer* v. *Bullitt Co.*, 110 U. S. 558; *Inhabitants of Brunswick* v. *City of Bath*, 90 Me. 479; *Carter* v. *Bridge Proprietors*, 104 Mass. 236.

In 1882 the legislature authorized the board of supervisors of Bay county to purchase from the Bay City Bridge Company a drawbridge across the Saginaw river, which purchase was soon thereafter made. Act No. 278, Local Acts 1889, established the Bay county bridge commission, which commission was authorized to receive from the board of supervisors a conveyance of the bridge which had been purchased by the board. In *People, ex rel. Attorney General*, v. *Bay County Bridge Commission*, 115 Mich. 622, it was held that the bridge commission acquired the title to the bridge and property which was formerly owned by the Bay City Bridge Company, and it was said:

"We think it also clear that whatever right the county of Bay had to the bridge and its approaches was afterwards acquired by the bridge commission, and following this right was the duty to keep in repair."

The township having acquired the title to this bridge, we think it logically follows that it is its duty to keep it in repair, and to provide the necessary funds to operate the draw, not exceeding the limitation fixed by law.

We have examined the other questions raised, but we do not deem it necessary to discuss them. We have already seen that the Constitution of our State requires the consent of the board of supervisors to the bridging of navigable streams. The record shows that this was obtained. It was accompanied by requirements as to the character and construction of the bridge. Among other things, it was required that a draw should be constructed and operated. As we have also seen, the legislature authorized what has been done. This action has been acquiesced in for a long series of years. If the prayer of the complainants is granted, the effect is to close the crossing of this stream against a large number of persons, or to compel them to go much farther, and to cross the river upon a toll bridge. We do not think the case made by complainants would justify such action.

The decree is affirmed, with costs.

The other Justices concurred.